Jeffrey J. Hunt (5855) (jhunt@parrbrown.com)
Cynthia D. Love (14703) (clove@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 S. 200 E., Suite 700
Salt Lake City, UT 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| YOUNG LIVING ESSENTIAL OILS, LC, a Utah limited liability company,<br><br>     Plaintiff,<br><br>v.<br><br>LINDSEY K. ELMORE, an individual; LINDSEY K. ELMORE, LLC, a limited liability company; WELLNESS MADE SIMPLE; and DOES 1-10,<br><br>     Defendants. | **COMPLAINT**<br><br>Case No: 2:22-cv-00496-JCB<br><br>Judge: Jared C. Bennett |

Plaintiff Young Living Essential Oils, LC ("Young Living"), by and through its undersigned counsel, hereby complains, alleges, and avers against Lindsey K. Elmore ("Elmore"), Lindsey K. Elmore, LLC, Wellness Made Simple, and Does 1-10 (collectively, "Defendants") as follows:

## <u>NATURE OF THE CASE</u>

1.       Young Living files this suit for injunctive relief against a former high-ranking employee and consultant who, in direct violation of various contractual agreements and her legal obligations, has willfully and intentionally misappropriated Young Living's trademarks for her own material gain, causing incalculable and incurable harm to the company.

1

2.     Rather than build her new wellness business legitimately, Elmore chose a different path—jump starting her new business by illegally misappropriating Young Living's intellectual property and goodwill to divert Young Living customers to Elmore's new competing business.

3.     Elmore's unlawful conduct is causing immediate, incalculable, and irreparable harm to Young Living's business goodwill and intellectual property rights, warranting immediate and interim injunctive relief.  The longer Defendants' escalating unlawful conduct continues unabated, the more serious the harm becomes for Young Living.

## PARTIES, JURISDICTION, AND VENUE

4.     Young Living is a Utah limited liability company based in Lehi, Utah.

5.     On information and belief, Elmore is a resident of Alabama and principal of Lindsey K. Elmore, LLC and Wellness Made Simple.

6.     On information and belief, Lindsey K. Elmore, LLC is an Alabama limited liability company.

7.     On information and belief, Wellness Made Simple is an Alabama business entity or, in the alternative, is a DBA of Lindsey K. Elmore, LLC.

8.     Does 1-10 are individuals and entities, currently unknown to Young Living, who have acted in concert with Defendants to infringe upon and misappropriate Young Living's valuable intellectual property.

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

10.     Jurisdiction is proper over Defendants because Young Living and Defendants have entered into a written agreement providing that the "parties hereby irrevocably submit to the exclusive jurisdiction and venue of courts located within the State of Utah for any disputes

arising hereunder." Brand Ambassador Consulting Agreement (the "Consulting Agreement"), attached as <u>Exhibit A</u>, § 18.

11.     Jurisdiction is also proper over Defendants because they have knowingly and intentionally caused injury to Young Living, a Utah entity, through misappropriation of Young Living's marks and diversion of Young Living customers to competing enterprises and because Defendants voluntarily entered into a contractual relationship with Young Living, a Utah entity, and their conduct alleged herein is related to that relationship.

12.     Venue is proper both because of the Parties' written agreement in the Consulting Agreement and because a substantial part of Defendants' misconduct occurred in Utah, including their intentional and willful infringement of Young Living's marks and diversion of Young Living's customers.

## <u>GENERAL ALLEGATIONS</u>

13.     Young Living is a full-spectrum health and wellness company specializing in top-quality essential oils drawn from the purest sources according to the highest standards. Young Living promotes whole-life wellness through its nutritional, weight loss, and personal care products made from the finest ingredients.

14.     Young Living operates through a direct selling model in which Young Living's products are sold and marketed through independent distributors who purchase products supplied by the company and sell those products to end-user customers.

15.     Young Living maintains dozens of valid and registered trademarks related to its goods and services, including marks incorporating the phrases "Young Living" and "YL," with and without images.

16.     Specifically relevant to this litigation, Young Living maintains the following registered marks related to essential oils, cosmetics, nutritional supplements, meal replacements, multi-level-marketing and entrepreneurship training materials, foods and beverages, books, newsletters, household goods, apparel, diffusers, online retail services, and retail store services:

| Mark | Registration No. | Registration Date | First Use |
|---|---|---|---|
| Young Living | 5161161 | Mar. 14, 2017 | May 15, 2003 |
| YOUNG LIVING | 5438421 | Apr. 3, 2018 | Dec. 31, 1994 |
| Young Living | 5438417 | Apr. 3, 2018 | Dec. 31, 2013 |
| Young Living | 5438414 | Apr. 3, 2018 | Dec. 31, 1994 |
| YOUNG LIVING | 5161250 | Mar. 14, 2017 | Dec. 31, 2003 |
| YOUNG LIVING | 5483701 | Jun. 5, 2018 | Dec. 31, 2014 |
| YOUNG LIVING | 5358170 | Dec. 19, 2017 | Dec. 31, 2014 |
| Young Living | 5344651 | Nov. 28, 2017 | Dec. 31, 1994 |
| Young Living | 5194887 | May 2, 2017 | Dec. 31, 1994 |
| YOUNG LIVING | 4732888 | May 5, 2015 | May 2014 |
| Y L | 5146995 | Feb. 21, 2017 | Dec. 31, 2014 |
| Young Living | 4222043 | Oct. 9, 2012 | Nov. 1, 1993 |
| Young Living Essential Oils | 3279460 | Aug. 14, 2007 | November 1, 1993 |
| Young Living | 2736573 | July 15, 2003 | Nov. 1993 |
| Y L | 5667391 | Jan. 29, 2019 | Jun. 14, 2017 |
| YL | Application for registration pending | | |

**Young Living's Relationship with Elmore and the Parties' Consulting Agreement**

17.     From August 2014 through February 2017, Elmore was employed as Director of Global Education and Health Science for Young Living.

18.     In this role, Elmore was tasked with developing and implementing Young Living's global education and training programs.

19.     She interfaced directly with Young Living's top distributors around the world on a regular basis, developing critical contacts among Young Living's most productive members.

20.     In 2017, Elmore entered into the Consulting Agreement with Young Living, becoming a highly visible brand ambassador for the company and continuing her regular interactions with Young Living's top distributors.

21.     In that role, Elmore regularly conducted presentations for Young Living, both online and through live events.

22.     Elmore also maintained an active social media presence in her role as a Young Living consultant and was promoted by Young Living as an educator.

23.     Elmore was highly compensated by Young Living in her role as a consultant earning $20,000 per month, plus the ability to earn additional fees ranging from $1,000 for a blog post to $5,000 for presenting at online and in-person events.

24.     In the Consulting Agreement, Elmore expressly acknowledged and agreed that:

> (i) [Young Living] is the exclusive owner of the Licensed Trademark; (ii) that there is great value and good will associated with the Licensed Trademark and that any enhanced value or goodwill accruing to the Licensed Trademark as a result of Consultant's use of the Licensed Trademark shall inure to the sole benefit of [Young Living]; (iii) that the Licensed Trademark has acquired secondary meaning in the minds of the public; and (iv) that neither [Elmore's] use of the Licensed Trademark nor anything in this [Consulting] Agreement shall create in [Elmore's] favor any right, title or interest in or to any of the Licensed Trademark, other than the right to use the Licensed Trademark in accordance with this, and

during the Term. [Elmore] asserts, and in the future will assert, no claim to any goodwill, reputation or ownership of the Licensed Trademark by virtue of [Elmore's] licensed use of the Licensed Trademark, or for any other reason. [Elmore] shall not question, impugn, disputed, contest or challenge, either during or after the Term, [Young Living's] ownership of and rights to the Licensed Trademark, and [Elmore] shall claim no interest therein, except the right to use the Licensed Trademark on the terms and conditions set forth herein.

Consulting Agreement § 12(b).

25.    Under the Consulting Agreement, Elmore was granted a limited license for the use of Young Living's intellectual property—including Young Living's trademarks—in relation to her consulting work for Young Living.

26.    That limited, non-exclusive license specifically included Elmore's use of Young Living's marks "in connection with [Elmore's] internet domain solely in connection with the sale of [Young Living's] products . . . ."  Consulting Agreement § 12(a).

27.    Elmore expressly promised "not to register or use any of the Licensed Trademark or an abbreviation of any of the Licensed Trademark as part of an Internet domain name, except as expressly authorized" in the Consulting Agreement.  Consulting Agreement § 12(c).

28.    Elmore also explicitly acknowledged that she "may not use the Licensed Trademark in connection with or for the benefit of, any third party's products or services or websites."  Consulting Agreement § 12(f).

29.    Elmore also expressly agreed that any "Company Work Product," defined as any

Invention, whether or not patentable, and all related know-how, designs, trademarks, formulae, processes, manufacturing techniques, trade secrets, ideas, artwork, software or other copyrightable or patentable works (**including, but not limited to the text and images of blog posts, the text and images of social media posts, Presentation transcripts, audio and video recording of Presentations**) . . . conceived, written, created, or first reduced to practice in the performance Services under this [Consulting] Agreement **shall be considered sole and exclusive property of [Young Living]**.

Consulting Agreement § 12(c).

30.     Elmore also promised that she would maintain all of Young Living's proprietary information—including customer and distributor contact information—to which she obtained access via her role as a consultant in strictest confidence and that she would not use such information "for any purpose other than the performance of the Services on behalf of [Young Living]." Consulting Agreement § 11(a).

**Elmore's Use of Young Living's Marks and Trade Secret Information**

31.     As part of her work under the Consulting Agreement, Elmore created the website yledclub.com (the "Website").

32.     The name "YLEdClub" refers to Young Living Education Club:



33.     Elmore sold monthly and annual subscription access accounts to the Website to customers seeking information about Young Living, its products and services, and the business opportunity available to Young Living distributors.

34.     Subscribers to the Website obtained access to marketing materials and training videos specific to Young Living, its products, and its business.

35.     The Website prominently features training videos and courses revolving around Young Living's products and business, as shown in the screenshots captured below:







36.    Elmore promoted the Website as the "easiest way to educate and grow your Young Living team":





**What Makes The Club So Different?**

There are a lot of Young Living education platforms out there, but there is only one YL Education Club. Education about Young Living is too hard to find and boring, one blog conflicts with the others, and the product catalog is so overwhelming it can feel like you fail before you even get started. The YL Education Club is different. Easy to navigate, you'll find the education that you want in a snap. You can add videos to your watch list and come back to them when you need a refresher.

Continue Reading

Are you sure you're
taking supplements

SUPPLEMENT
SAFETY

37.     Through the Website, Elmore also generated an email list of Young Living customers and distributors who had signed up for YLEdClub to learn about Young Living's products and services.

38.     Individuals seeking information about Young Living could sign up for the email list without paying for access to the Website.

39.     Although the exact number of subscribers to the Website and the email list is unknown, on information and belief, significant numbers of Young Living customers and distributors subscribed to the Website and the email list.

40.     As a result, Elmore obtained Young Living's confidential trade secret information—customer and distributor contact information—through her use of Young Living's marks.

41.     In addition to the Website, Elmore promoted her affiliation with Young Living through various social media accounts, including Instagram, Facebook, Twitter, Pinterest, Snapchat, and YouTube.

42.     As a consultant, Elmore was required to create monthly Facebook Live

presentations and weekly social media posts promoting Young Living and its products.

43.    Elmore was paid for these presentations and social media posts, which were expressly designated as "Company Work Product" and the sole and exclusive property of Young Living.  Consulting Agreement § 11(c).

**Termination of the Consulting Agreement and Elmore's Willful and Escalating Infringement**

44.    The Consulting Agreement terminated in January 2021.

45.    Following termination of the Consulting Agreement, Elmore was obligated to "immediately cease use of any and all intellectual property owned or controlled by the company including, but not limited to, social media accounts, trademarks and copyrighted materials." Consulting Agreement § 9(b).

46.    Although the Consulting Agreement contemplated that Elmore would retain rights to her personal social media pages, it expressly states that the "Lindsey Elmore" Facebook page is the exclusive property of Young Living.  Consulting Agreement § 9(b) & Ex. A.

47.    Following termination of the Consulting Agreement, Young Living sent Elmore a letter reminding Elmore of her obligations to cease infringing use of Young Living's intellectual property.  *See* March 4, 2021 Letter to Elmore ("Elmore Letter"), attached as <u>Exhibit B</u>.

48.    Young Living specifically instructed that Elmore should cease any infringing use of the following:

- The "YL" trademark in the name of the "YL Ed Club" service

- The "YL" trademark in the yledclub.com domain name

- The "YL" trademark in a YL Ed logo on Elmore's website

- Young Living's copyrighted content, product imagery, videos, and posts in the YL Ed Club service and other websites

49.     Despite Young Living's express warning, on information and belief, Elmore continued to use the Website—and Young Living's content—to generate subscriptions to the Website.

50.     Elmore continued to use the email list associated with the Website and generated through the use of Young Living's intellectual property to contact Young Living customers and distributors.

51.     Although Elmore initially used the Website and associated email list to promote Young Living products, she began to promote non-Young Living products using the customer contact information she obtained through the use of Young Living's marks and other intellectual property, such as this blast email to the Website's email list:

**From:** Lindsey Elmore <hello@lindseyelmore.com>
**Date:** June 9, 2022 at 9:48:22 AM MDT
**To:**
**Subject: Transform your health by tuning your frequency**



**Introducing a device where technology meets health and wellness.**

AmpCoil is a wellness tool that works with the body's energetic force to bring

balance and homeostasis at a sub-cellular level.

Using the following techniques, the AmpCoil stimulates the body's natural recovery process and tunes the cells' resonance back to their natural state. This restores harmony in the energetic body, allowing for healthy homeostasis.

- Sound Frequency Delivery
- Pulsed Electromagnetic Field Therapy (PEMF)
- BioAcoustic AmpCoil Magnetic Field
- Bioresonance

This balancing improves cellular respiration, balances pH, increases energy, improves  circulation and immune response, and alleviates depression and stress. I can tell you from my experience, it makes you feel more energized and grounded.

I get it. The AmpCoil is kinda pricey. But unlike many health and wellness products, you only need to buy this once. And right now, AmpCoil is offering a limited Time Financing Special. Take advantage of this opportunity to get your AmpCoil with no money down, no payments for 90 days, and no interest for a full year.

**If you are ready to purchase, use the coupon code DRLINDSEY to get $99 off!**



P.S. **Still have questions or want more information?** Set up a chat or meeting with one of the AmpCoil experts to get answers to all your questions.

---

Sent from: Lindsey Elmore, 800 Fairview Rd. #308, Asheville, NC 28803, United States
ley! You're an adult and have options. If you'd like to be removed from all future email, please go here. But wait! You can tailor your email experience to only receive the email you want (and the frequency you desire).

You can unsubscribe or update preferences here.

52.     On or around April 27, 2022, Young Living sent Elmore a cease-and-desist letter,

demanding that Elmore cease her infringing uses of Young Living's marks and other intellectual property. *See* April 27, 2022 Letter to Elmore ("Second Elmore Letter"), attached as <u>Exhibit C</u>.

53.     The parties attempted unsuccessfully to mediate their dispute on July 15, 2022.

54.     Following the mediation, Elmore continued—and escalated—her infringing conduct.

55.     On July 26, 2022, Elmore sent the following solicitation to Young Living customers and distributors who had subscribed to the email list associated with the Website:

> From: **Lindsey Elmore** <<u>hello@lindseyelmore.com</u>>
> Date: Tue, Jul 26, 2022 at 11:35 AM
> Subject: Been thinking about trying Amare?
> To:



# End of the Month Flash Sale is Here

Hey there,

We've been talking for a while about Amare's Mental Wellness product for months, and if you've been thinking of taking the plunge, you can get a free product credit when you sign up as a customer.

You can also sign up as a Wellness Partner for free and get a free product credit.

Shop the code AMARE0722 and get ready to tackle mental wellness for good.   Less stress, more serotonin, more dopamine, more GABA, and just overall feeling better.

Are you in today?

Dr. Lindsey



P.S. Reminder that the active promo code for a free 2 pack of Ignite is still valid for anyone who signs up with a Financial Wellness Pack.

---

Sent from: Lindsey Elmore, 800 Fairview Rd. #308, Asheville, NC 28803, United States

Hey! You're an adult and have options. If you'd like to be removed from all future email, please go here. But wait! You can tailor your email experience to only receive the email you want (and the frequency you desire).

You can unsubscribe or update preferences here.

56.     The "Shop Now" link directs to the website for Amare Global

(https://www.amare.com/86207/en-us/), a multi-level-marketing company that competes directly

with Young Living.

57.     In addition, sometime after the mediation, Elmore caused the yledclub.com URL

to redirect to wellnessmadesimple.us.

58.     When visitors attempt to access the Website, they receive the following message:

🔒 wellnessmadesimple.us    ⬆

# Wellness *made simple*

**Sign In**     **Get Access**

## YLED is now WMS     ✕

Congrats! Your membership now includes access to WellnessMadeSimple.com. View past invoices and manage your account here.

Your login info is the same!

NEW

← → ⊕ 1 ⋯

59.     Elmore's actions have the effect of redirecting Young Living customers and distributors to a competing company's website, blatantly trading on Young Living's protected marks and goodwill.

60.     The message received by individuals attempting to visit the Website is that their subscription—to a Young Living education site—"now includes access to WellnessMadeSimple.com," indicating Elmore's clear understanding that customers seeking information about Young Living are among the exact audience that she is soliciting to a competing business.

61.     Elmore's actions are unlawful, willful, and intentional.

62.     If not enjoined, Elmore will continue to actively solicit Young Living customers and distributors whose contact information she obtained through the use of Young Living's protected marks and trade secrets, causing untold and unknowable damage to Young Living's business and goodwill.

63.     It is vitally important that Elmore's unlawful conduct be stopped, and that Elmore be restrained from further wrongdoing.

### FIRST CAUSE OF ACTION
**Trademark Infringement – All Defendants**

64.     Young Living hereby incorporates the allegations contained in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     Young Living maintains registered trademarks for "Young Living" and "YL," as well as variations on those marks related to Young Living's products and services.

66.     Elmore has used and continues to use Young Living's marks to promote her own and others' competing businesses to Young Living customers and distributors in at least the following ways:

a. Continued use of "YL" and "Young Living" through the Website following termination of the Consulting Agreement;

b. Continued use of "YL" in the yledclub.com domain name;

c. Use of the customer and distributor email list generated through the use of Young Living's marks to promote non-Young Living products and companies;

d. Redirecting the yledclub.com domain name to a new, competing wellnessmadesimple.us domain;

e. Continued use of Young Living's marks on Elmore's social media accounts and other websites; and

f. The use of Young Living's marks to promote paid subscription accounts to customers and distributors of Young Living through the yledclub.com domain that redirects to Elmore's new site.

67. Elmore's use of Young Living's marks has or will cause a likelihood of confusion.

68. Young Living is entitled to injunctive relief against Elmore and all those acting in concert with her as specified below, including an award of attorney fees and costs incurred in securing the injunctive relief sought herein.

## SECOND CAUSE OF ACTION
### Breach of Contract – Lindsey Elmore and Lindsey K. Elmore, LLC

69. Young Living hereby incorporates the allegations contained in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

70. The Consulting Agreement constitutes a binding and enforceable agreement with Young Living.

71. Elmore's actions that constitute material breaches of the Consulting Agreement

include, but are not limited to the following:

    a. Failing to immediately terminate her use of Young Living's trademarks and other intellectual property;

    b. Using Young Living's proprietary information, including distributor lists and contact information, for purposes other than the performance of her obligations under the Consulting Agreement, including the diversion of Young Living customers and distributors to competing businesses and products; and

    c. Continuing her use of Young Living's Company Work Product—as defined in the Consulting Agreement—following termination of the agreement.

72. Young Living has fully performed all of its obligations under the Consulting Agreement.

73. A covenant of good faith and fair dealing inheres in the Consulting Agreement.

74. Elmore's conduct as alleged herein has breached the covenant of good faith and fair dealing in that she has failed to live up to her contractual obligations, has frustrated the purposes for which the Consulting Agreement was signed by Young Living, and has otherwise not acted in good faith, denying Young Living the benefit of its bargain.

75. As a direct and proximate result of the material breaches by Elmore, Young Living has suffered and continues to suffer substantial and irreparable harm, as well as actual and consequential damages.

76. Accordingly, Young Living is entitled to injunctive relief against Elmore as specified below, and to all other such relief as may be available, including an award of its attorney fees and costs incurred in securing the preliminary injunctive relief sought herein.

## THIRD CAUSE OF ACTION
### Misappropriation of Trade Secrets – All Defendants

77.     Young Living hereby incorporates the allegations contained in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

78.     The contact information Elmore obtained from individuals subscribing to the Website and the email list constitutes Young Living's proprietary information and a trade secret.

79.     The compilation of such proprietary information is highly valuable and not readily ascertainable to the public or to Young Living's competitors.

80.     Elmore obtained Young Living's proprietary information under circumstances in which she had a duty to maintain it confidentially and, during at least some time periods, through misuse of Young Living's trademarks.

81.     Young Living took reasonable efforts to maintain the secrecy of its proprietary information, including strict contractual limitations on the disclosure of such information.

82.     Elmore's use of Young Living's proprietary information has caused and will cause Young Living significant harm.

83.     Young Living is entitled to injunctive relief against Elmore and all those acting in concert with her as specified below, including an award of attorney fees and costs incurred in securing the injunctive relief sought herein.

## PRAYER FOR RELIEF

WHEREFORE, Young Living demands against Elmore and all those acting in concert with her who receive notice as follows:

1.  Temporary, preliminary, and permanent relief as described below:

    a.  An order restraining Defendants from the use or display of Young Living's marks, and any confusingly similar marks, for any commercial purpose;

b.   An order directing that Defendants turn over control of the Website and all of its associated content to Young Living;

c.   An order directing that Defendants turn over control of the email list associated with the Website to Young Living and that Defendants destroy any copies of customer or distributor contact information obtained through the Website;

d.   An order restraining Defendants from displaying any references to Young Living or its products in any location, including without limitation through any social-media account, that any Defendant has used or uses to display promotional materials, sales aids, products, or services of a competing business venture;

2.   An award of attorney fees and costs as allowed by law; and

3.   Such other relief as this Court deems reasonable and just.

DATED this 1st day of August, 2022.

PARR BROWN GEE & LOVELESS, P.C.

s/ *Cynthia D. Love*
Jeffrey J. Hunt
Cynthia D. Love

*Attorneys for Plaintiff Young Living Essential Oils, LC*